UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DAVID SCHIED,<br><br>     Plaintiff<br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>    et al.,<br><br>     Defendants | 5:21-cv-5030<br><br><br>MEMORANDUM OPINION<br>and ORDER |

Plaintiff Schied, pro se, has filed several Motions in conjunction with his

262-page, 460-paragraph Complaint (Doc. 1) which names the United States, 73

Defendants (most in both their personal and official capacities), and up to 30 John

and Jane Does. The Defendants include the United States of America; the former

President of the United States and many of his administration's officials; current

Executive Branch officials and agencies; federal judges, the federal court, and

federal court clerks in the State of Michigan; the office of the United States

Attorney, and four current and former US Attorneys in Michigan; FBI agents; the

sitting and former Governors and Attorneys General of the State of Michigan and

staff members; Wayne County, Michigan; the City of Novi, Michigan, and several

of its officials; the Michigan State Bar and Grievance Committee; Michigan state

judges, administrative law judges, and Executive Branch agencies; Michigan

disability rights organizations; the University of Illinois and the Illinois Great

Lakes ADA Center;  DTE Energy; Collier's International; Tactical Rabbit; credit

reporting agencies including TransUnion, Equifax and Experion; organizations

which handle student loans, including Nelnet, Educational Credit Management

Corporation, Pennsylvania Higher Education Assistance Authority; and Capital

One with its founder, Richard Fairburn.

Plaintiff's Motions include the following:  MOTION for Leave to Proceed in

forma pauperis (Doc. 6);  MOTION to File Declarations and Service on Adverse

Party Constituting Notice to Other Parties Under Rule 5 of FRCP and Beneficiary's

Motion for Indigent and Disabled Filer to Avoid Expensive Copy and Mail Costs

by Waiver as a CM/ECF E-Filer (Doc. 7); and MOTION for Certification of

Service of Subpoenas and Complaints by U.S. Marshals Without Prepaying Fees or

Costs  (Doc. 9).

Plaintiff also filed an attachment to his Motion for Certification of

Subpoenas and Complaints by U.S. Marshals without Prepaying Fees or Costs

(Doc. 9) entitled "EMERGENCY MOTION TO EXPEDITE and MOTION FOR

IMMEDIATE TEMPORARY DECLARATORY AND INJUNCTIVE RELIEF on

Case of Real THREAT OF VIOLENCE Against Totally and Permanently Disabled Quad-Amputee Being  CRIMINALLY EVICTED in spite of the 2020 CDC ORDER OF EVICTION MORATORIUM and the 2021 CORONAVIRUS PANDEMIC STIMULUS RELIEF BILL OF CONGRESS", and indicated "as mailed (on 1/5/21) to the U.S.DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN." (Doc. 1, ¶ 449(c)(1), PageID 264).  That Motion has been rendered moot by his filing in the District of South Dakota.

Subsequent to filing his initial motions and complaint, plaintiff filed the following additional motion:  BENEFICIARY'S / RELATOR's OBJECTION TO SEALING OF CASE and MOTION TO SHOW CAUSE and DEMAND (OR ORDER) FOR FEDERAL SPECIAL GRAND JURY INVESTIGATION (Doc. 11, PageID 626).  Plaintiff made the following demand:   For the reasons already stated as matters of verifiable FACT which are NOT FRIVOLOUS, the DOCKET SHEET for this case in the ARTICLE III COURT OF RECORD should be immediately corrected to reflect the following:

a) That this action is being "PRESENTED", not "REPRESENTED";

b) That David Schied is filing "SUI JURIS", not "PRO SE";

c) That David Schied's filing status is referred to as "BENEFICIARY/RELATOR", not "PLAINTIFF;

3

d) That those against whom David Schied has filed his "ORIGINAL

COMPLAINT,.:' are FIDUCIARY "[CO-]TRUSTEES", not "[co-]Defendants";

e) That the original DATE OF FILING was 4/22/21 - the date the documents

were RECORDED as being initially "received" by the CLERK OF THE COURT,

not 5/7/21 as the arbitrary and capricious date determined by the CLERK OF THE

COURT acting with tortuous conduct and other "bad behavior" as a "STATE-

BAR" member AGENT otherwise acting privately on behalf of the CO-

TRUSTEES.

f) That this COMMON LAW and CONSTITUTIONAL case was previously

"SEALED" without valid authority -justifying this action to reverse that

unauthorized action as a matter of OFFICIAL RECORD - so as to immediately

"UNSEAL" this case;

(Doc. 11, ¶¶ 19-20, PageID 636)(sic)). (Plaintiff's formal claim for relief is

lengthier, Doc. 11, ¶¶38-39, PageID 647-648).

Finally, Plaintiff filed a DEMAND (ORDER) for special grand jury

investigation and Motion to Amend/Correct Complaint (Doc. 13). In this Motion,

he names "Doe" Defendants from his Complaint (Doc. 1), some of whom had been

named previously, and all of whom are judges, court personnel, local government

officials, prosecutors, or law enforcement officers in the State of Michigan. All

activities he alleges occurred in the State of Michigan. Some appear to relate to

4

land development in Novi, Michigan. (Doc. 13, ¶ 15). Other allegations, which are numerous, allege a variety of misconduct, including but not limited to racketeering (id., ¶¶ 91, 119), insurrection and domestic terrorism (id., ¶¶ 116, 127), denial of access to courts (id., ¶ 140), and corruption (id., ¶ 166). He alleges some Defendants are "imposters and usurpers of the Sovereign Powers of the People of Michigan." (Id., ¶ 197). He incorporates all allegations and seeks the remedies from his original Complaint. (Id., ¶ 202). He adds the following demand: $306 billion "in constitutional gold-backed currency only.... until and/or unless either 'heads roll' or a generous number of these named RICO criminals see long jail times...." (Id., ¶ 201).

## I. Motion for Leave to Proceed In Forma Pauperis

Plaintiff Schied seeks in forma pauperis status in conjunction with his lawsuit. (Doc 6). A person may be permitted to proceed in forma pauperis if he or she "submits an affidavit that includes a statement of all assets" the person possesses, and also states "that the person is unable to pay such fees or give security therefore." 28 U.S.C. § 1915(a)(1). The Eighth Circuit has established parameters for addressing in forma pauperis motions in a number of cases, including *Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982), where the Court recognized that a petitioner's financial status should first be evaluated, and

screening under 28 U.S.C. § 1915 should follow. *Id.* The court recognized that the

applicant need not establish "absolute destitution." *Lee v. McDonald's Corp.*, 231

F.3d 456, 459 (8th Cir. 2000). See also *Babino v. Janssen & Son*, 2017 WL

6813137, at *1 (D.S.D. 2017). The District Court's task is to determine whether

the plaintiff's allegation of poverty is true, and that determination is within the

court's discretion. *Lee*, 231 F.3d at 459. Plaintiff has submitted sufficient

documentation to establish that he should be permitted to proceed in forma

pauperis. He has reported a minimal amount of funds in his checking account, and

also reports he is unemployed. (Doc. 6). This determination means his claims will

be screened under 28 U.S.C. § 1915(e).

## II. Motion to Amend Complaint

Plaintiff seeks to amend his Complaint (Doc. 1) to identify Doe Defendants

from his original complaint and to add allegations about perceived misconduct and

criminal conduct. Under Federal Rule of Civil Procedure 15(a)(1)(A) "a party may

amend its pleading once as a matter of course within 21 days after serving it."

Plaintiff's Complaint has not been served and can be amended without leave of

court. Plaintiff's Motion to Amend his Complaint is granted. The Court has

reviewed the Amended complaint carefully.

6

## III. Analysis

## A. Legal standards

Because plaintiff is proceeding *in forma pauperis*, the court must screen his complaint in accordance with 28 U.S.C. § 1915(e). *Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. AR. 2016); *Lundahl v. JP Morgan Chase Bank*, 2018 WL 3682503 (D. S.D. 2018). The statute provides as follows:

> Notwithstanding any filing fee, ... the court shall dismiss the case at any time if the court determines that—
>
>     ...
>
>     B) the action or appeal—
>
>         (i) is frivolous or malicious;
>
>         (ii) fails to state a claim on which relief may be granted; or
>
>         (iii) seeks monetary relief against a defendant who is immune
>
>             from such relief.

In screening Plaintiff's pro se Complaint, the court must liberally construe it and assume as true all facts well pleaded in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action's elements, supported by

mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,

173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A reviewing court has the duty to examine a

pro se complaint "to determine if the allegations provide for relief on any possible

theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). A plaintiff must

demonstrate a plausible claim for relief, that "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft*, 556 U.S. at 675. If it does not contain these bare essentials, dismissal is

appropriate. The court is not required to construct legal theories for the plaintiff to

enable the case to proceed. *Marglon v City of Sioux Falls Police Dept.*, 2020 WL

906521, *2 (D.S.D. 2020)(citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.

2004)).

Plaintiff's lengthy Complaint and the breadth of his claims, including his

Motions for various types of relief, do not comply with the requirements of Rule

8(a)(2) (plaintiff's claim for relief must consist of "a short and plain statement of

the claim showing that the pleader is entitled to relief") and Rule 8(d)(1) ("each

allegation must be simple, concise, and direct"). Nevertheless, the Court has

undertaken a thorough evaluation of Plaintiff's claims and their validity with

respect to the named Defendants. It is noteworthy that Plaintiff has alleged all

Counts against all Defendants, who are not similarly situated. As a result, the

Court will first address Plaintiff's claims as he has fashioned them, discuss their validity against the relevant Defendants, and finally, address other pertinent issues.

## B. Plaintiff's Claims

1. Introduction

Plaintiff has styled his action as a "Whistleblower, Qui Tam, False Claims Act" case but that designation is not accurate. Plaintiff has expressed many grievances against the Defendants, including his allegations that officials have been grossly negligent in enforcing the law Plaintiff thinks should be enforced (Doc. 1, ¶ 91(e)); complaints about the operation and functioning of the State of Michigan (id., ¶ 29); alleged funding of international terrorism by Defendants (id., ¶149(g)); complaints about government's operating through administrative agencies (id., ¶¶ 15-17); Defendants' alleged violation of the public trust (id., ¶ 6); alleged perjury by officials in taking their oaths of office (id., ¶ 11); and alleged offenses including conspiracy at many levels (id., ¶ 13), fraud (id., ¶ 283), and embezzlement (id., ¶ 87). Plaintiff alleges there is no legitimate government operating within the boundaries of the Sixth Circuit (id., ¶ 35). Plaintiff asserts he has set up his own court to deal with such issues. (Id., ¶ 45). Plaintiff seeks the empaneling of a Grand Jury and Petit Jury; damages of $1,053,560,000.00 (id., ¶ 454; 459(b)); and other relief.

9

Included in the additional relief Plaintiff seeks is resolution of his allegations that various officials have violated the public trust, including with respect to failing to determine the 2020 election was "stolen" (id., ¶ 402). More importantly, he seeks a determination of how "the federal system being operated by agents of SCOTUS [federal judges, justices and magistrates] really functions to create and sustain social chaos, political anarchy, and what amounts to the wholesaling of domestic terrorism." (Id., ¶ 419). All Defendants, in Plaintiff's view, allegedly are guilty of some combination of insurrection, (id., ¶¶ 83, 90, 91a, 124, 136, 142, 145, 218, 220, 222, 223, 240, 303, 371, 433, 442); domestic terrorism, (id., ¶90, 94, 124, 135b, 136, 142, 145, 152, 164, 171, 218, 207, 220, 222, 223, 224, 240, 290. 303, 371, 433, 442); treason, (id., ¶¶ 131, 148b, 179, 214, 218, 224, 303, 418, 425, 426, 433, 442); and sedition (id., ¶¶ 131, 148b, 179, 214, 218, 303, 418, 433). Count 12 of the Complaint alleges all four (Id., ¶¶ 372-392). Plaintiff alleges Defendants are guilty of high crimes and misdemeanors (id., ¶ 425). As a result, Plaintiff argues, a Grand Jury should be empaneled, private prosecution should be allowed and initiated, and all Defendants should be arrested immediately and imprisoned pending a public hearing to answer Plaintiff's allegations. (Id., ¶ 441).

Plaintiff initially filed a lawsuit in the District Court for the Eastern District of Michigan, 2:21-mc-50051-VAR-EAS, in January 2021 seeking removal to federal court of an eviction action in Michigan state court. (Doc. 1 of 2:21-mc-

50051). The federal court remanded the case to state court (Doc 5, id., 2/17/21).

Plaintiff has alleged similar claims with respect to his landlord-tenant issue as part

of his lawsuit in the District of South Dakota, but has expanded his claims

considerably. All actions addressed in Plaintiff's current lawsuit occurred in the

State of Michigan.

2. Plaintiff's Claims for Relief

Count I-- Common Law and Human Rights Torts

      In hundreds of paragraphs Plaintiff expresses his view of the alleged

conspiracies by federal, state and private officials to, among other things, engage in

criminal behavior including fraud (Doc. 1, ¶ 283); failure to enforce the law (id., ¶

91(e)); violation of the public trust (id., ¶ 6); negligence in carrying out official

duties (id., ¶ 91(e)); and to violate the Constitution by reliance on  administrative

agencies (id., ¶¶ 15-17). It appears that Plaintiff intends these allegations to serve

as the basis for Count I. Plaintiff has not alleged sufficient facts to support his

claims to the extent they would constitute common law torts that he would have

standing to pursue, and his claim against all Defendants is dismissed. 28 U.S.C. §

1915 (e)(2)(B)(i-ii).

      Plaintiff does not allege sufficient facts to establish any violation of his

human rights, and this claim is dismissed. 28 U.S.C. § 191(e)(2)(B)(i-ii).

11

Plaintiff has alleged that two FBI agents are guilty of attempted murder of plaintiff. (Doc. 1, ¶¶ 55, 75). Plaintiff has not alleged sufficient facts to substantiate that there was an attempted murder of Plaintiff by anyone, or that agents were involved in any action that could be interpreted as such, and his claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count II—Federal Tort Claims Act and Judicial Disability Act
    A. Judicial Conduct and Disability Act
    The Judicial Conduct and Disability Act, 28 USC § 351 sets forth a procedure for filing complaints of misconduct about a sitting federal judge. This Court is not the proper forum for such a complaint, and the Plaintiff's claim is dismissed.

Furthermore, Plaintiff has filed his claimed violation of FTCA and JCDA against all Defendants, including those who are not federal officials. For that reason alone, his claim is dismissed. In addition, however, Plaintiff has set forth a frivolous and malicious conspiracy theory that judges in the Eastern District of Michigan have engaged in judicial misconduct about which he has complained numerous times, and about which he has "70 boxes of information." (Doc. 1, ¶ 240). He accuses those judges of operating a "protectionist racket of insurrectionism and domestic terrorism," (id.), and further accuses them of

12

perpetrating fraud, (id.). Tellingly, he notes they have ruled against him in the past. (Id.). See, e.g., *Schied v. Daughtrey*, 2008 WL 5422680 (E.D. MI. 2008); *Schied v. Daughtrey*, 2009 WL 818095 (E.D. MI. 2009); *Schied v. Daughtrey*, 2009 WL 369484 (E.D. MI. 2009); *Schied ex rel. Student A v. Snyder*, 2010 WL 331713 (E.D. MI. 2010); *Kraus ex rel. Schied v. Nielsen*, 2012 WL 2681369 (E.D. MI. 2012); *Schied v. Khalil*, 2016 WL 4727477 (E.D. MI. 2016); *Schied v. Khalil* (R&R) 2016 WL 11472341 (E.D. MI. 2016). Plaintiff's allegations do not fit the requirements of either the FTCA or JCDA, and his claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

The issue of judicial immunity is discussed below in Section C. 1.

B. Federal Tort Claims Act

The Federal Tort Claims Act authorizes certain lawsuits that are (1) against the United States; (2) for money damages; (3) for injury or loss of property; (4) caused by a negligent or wrongful act or omission of any employee of the government; (5) while acting within the scope of his office or employment; (6) under circumstances in which United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §1346(b). See *Brownback v. King*, ___ U.S. ___, 141 S. Ct. 740, 746, 209 L.Ed.2d 33 (2021). Although the statute waives sovereign immunity

and permits a lawsuit against the United States, it places restrictions on recovery from individual federal employees. In addressing these restrictions, the *Brownback* Court quoted 28 U.S.C. § 2676 as follows: "The judgment in an action under § 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." *Id.* at 746. The Court reiterated that once a plaintiff receives a judgment on the merits in a FTCA suit, whether or not the judgment is favorable, the "judgment bar is triggered" and the plaintiff "generally cannot proceed with a suit against an individual employee based on the same underlying facts." *Id.* (quoting *Simmons v. Himmelreich*, 578 U.S. 621, 625, 136 S.Ct. 1843, 195 L.Ed.2d 106 (2016)).

In addressing the judgment bar, the Brownback Court resolved an issue pertinent to Schied's lawsuit. The problem before the Court was whether a lawsuit under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) would lie against federal agents who allegedly had violated Brownback's rights under the Fourth Amendment and also committed several torts under state law. The District Court had dismissed all claims, ruling in the alternative that plaintiff had not alleged sufficient facts to entitle him to relief under Rule 12(b)(6) and also that defendants had qualified immunity. *Id.*, at 748. The Supreme Court determined that the dismissal had preclusive effect because the

14

District Court had ruled on the substance of plaintiff's claims, finding them "implausible." *Id*. at 749. The Court recognized that this determination also deprived the District Court of subject matter jurisdiction. *Id*. In sum, according to the Court, once the plaintiff's claims were dismissed, "the United States necessarily retained sovereign immunity, also depriving the court of subject-matter jurisdiction." *Id.*, at 749. The import of this ruling is that once the claims against the Government are dismissed, they must be dismissed against the individuals as well.

In this case, the Court dismisses all of Schied's FTCA claims against the United States, as implausible and for failure to supply sufficient facts in support of his claims. This ruling necessarily resolves the FTCA case against all federal officials whom Schied has sued in their official and individual capacities, and those claims are hereby dismissed as well. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count III—Constitutional Torts

Plaintiff alleges that his allegations in Counts I and II amount to constitutional torts. (Doc. 1, ¶ 243). He alleges that he has been denied redress of grievances, (id., ¶ 246, and below in Count IV). He alleges he has been denied due process by denial of access to government documents (id., ¶ 247) and failure to redress his grievances (id). He alleges government officials have injured Plaintiff

and "other sovereign American people" (id., ¶ 252) through inflicting harm and covering up their actions. He alleges government officials engage in a RICO conspiracy to enable themselves to commit more torts. (Id., ¶ 255). As noted in the discussion of Count I, he alleges he has been the victim of an attempted murder by federal agents. (Id., ¶ 45).

Plaintiff alleges he has established 108 constitutional torts and issued citations to various government officials over the years, based on his perception of constitutional violations. (Id., ¶ 458). This has factored into his demand for damages in the amount of total of $1,053,560,000.00

The Court has dismissed Plaintiff's Counts I and II and now dismisses Count III for failure to allege sufficient facts in support of his claim. As the Court discusses in addressing the remaining Counts of Plaintiff's Complaint below, he does not allege sufficient facts in support of any of the Counts of his Complaint, and he is not entitled to relief under the law. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count IV—First Amendment Claim

Plaintiff alleges a violation of the First Amendment in denying him Redress of Grievances. (Doc. 1, ¶ 75). He alleges he was denied meaningful access to the courts. As is evident from the Court's discussion of Count II above, plaintiff has availed himself of the federal courts numerous times. He has pursued lawsuits at the District Court level, and then appealed to the Circuit Courts. He has petitioned

for and been denied certiorari by the United States Supreme Court in several cases including *Schied v. Nelson*, 571 U.S. 846 (2013); *Schied v. Ward*, 565 U.S. 1231 (2012); *Schied v. Snyder*, 565 U.S. 982 (2011). Plaintiff's Complaint, (Doc.1), recounts substantial activity in Michigan federal court, although he has been dissatisfied with the results. He also attaches numerous documents previously filed in Michigan to his Motion at Docket 7 (Doc. 7-2,7-3, 7-4, 7-5). It is clear Plaintiff has had access to the courts in Michigan, and now in South Dakota. His disagreement with the outcome does not mean he was denied access to the courts. Plaintiff has failed to state sufficient facts in support of his claim that he was denied redress of grievances, and his claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count V—14th Amendment and Americans with Disabilities Act Claim

Plaintiff repeats his claim from Count IV that he was denied due process based on failure to redress his grievances, and the Court has denied that claim. He has alleged a violation of the Americans with Disabilities Act, which merits discussion. Mr. Schied contracted sepsis in 2018 and as a result, both of his legs have been amputated below the knees. (Doc. 1). He has lost several fingers to amputation as well. Plaintiff is disabled, and states in his filings that he is a recipient of Social Security and Medicare benefits.

17

The Americans with Disabilities Act states, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. See *Mason v. Con. Med. Servs., Inc.*, 559 F.3d 880, 886 (8th Cir. 2009). The statute defines a "public entity" to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(A) and (B). Thus, states and state agencies fit the definition of "public entity," but individual defendants do not. See *Dinkens v. Correctional Medical Servs.*, 743 F.3d 633, 634 (8th Cir. 2014); *Klingler v. Director, Dept. of Revenue*, 433 F.3d 1078 (8th Cir. 2006); *Johnson v. Daugaard*, 2018 WL 1440330 (D.S.D. 2018).

To state a claim under Title II of the ADA against defendants in their official capacity, Schied must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the government agency's services, programs, or activities, or was otherwise subjected to discrimination by the agency; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability. See *Johnson*, 2018 WL 1440330, *3 (D.S.D. 2018).

Plaintiff sues all Defendants in their personal and official capacities. (Doc. 1). The above provisions of the ADA make clear that all Defendants are not liable in their individual capacities for money damages, and those claims are dismissed. Plaintiff alleges that an ADA claim arises from the eviction action instituted by his landlords in Michigan, (id., ¶ 264), who are private parties. The claim is dismissed against them. The landlords' asking plaintiff to sign a new lease is not retaliation and involved a private party, so the claim is dismissed. Plaintiff alleges that FBI agents violated the ADA when they went to his hospital room, (id., ¶113). He does not allege sufficient facts in support of his claim and it is dismissed. Plaintiff alleges that Capital One and its President, Richard Fairburn, violated the ADA but offers insufficient facts in support of his claim, which is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Plaintiff alleges both fraud and false statements resulting from the denial of certain benefits. (Doc. 1, ¶¶ 213-216). The Court dismisses these claims to the extent they are based upon alleged fraud or false statements, as there is insufficient evidence to support the allegations. The Court also finds no evidence to support Plaintiff's claim that he was discriminated against because of his disability, and dismisses the claim as it purports to state a violation of the Americans with Disabilities Act.

The Court is cognizant of the fact that Plaintiff's disability causes him some difficulty in accessing Social Security and Medicare services for which he qualifies. His claim in this case is for money damages (id., ¶ 457), however, and is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count VI—Conspiracy to Deprive Plaintiff of Rights

Plaintiff cites 18 U.S.C. §§ 241-242 as the basis for this claim. Courts repeatedly have held that there is no private right of action under 18 U.S.C. § 241. Federal authorities have the task of determining whether to pursue criminal charges. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) (cleaned up). See also *Mousseaux v. United States Comm'r of Indian Affairs*, 806 F. Supp. 1433, 1437 (D.S.D. 1992). Because there is no private right of action under these provisions, this claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Plaintiff should be aware of this rule because he was advised of it in the case of *Schied ex rel. Student A v. Snyder*, 2010 WL 331713, *2 (E.D. MI. 2010), where the court dismissed his 232-page complaint against a school principal and other Defendants. Plaintiff had made a conspiracy allegation, and in dismissing it, the court held a private party cannot bring a conspiracy case under 18 U.S.C. § 241.

Count VII—Racketeer Influenced and Corrupt Organizations Act Claim

Plaintiff asserts that defendants have violated RICO and weaves a lengthy, complex, and unfounded theory to support his claim. RICO grants "any person injured in his business or property by reason of a violation of §1962 of this chapter" a private right of action, 18 U.S.C. §1964(c). Section 1962 makes it unlawful to use income and/or unlawful debts to participate in, or acquire an interest in, or conduct the affairs of an enterprise through a pattern of racketeering that affects interstate commerce. 18 U.S.C. § 1962(a-c). A conspiracy to violate §1962 (a-c) is prohibited by §1962(d).

Plaintiff claims that defendants have violated RICO at every level of federal and state government and in private activity. His claims permeate the entirety of his complaint (Doc.1). Even with liberal construction, Plaintiff has not alleged sufficient facts to support a RICO claim. Thus, his claims under RICO are dismissed under 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count VIII—Contempt of Congress/Centers for Disease Control Order

In response to the coronavirus pandemic sweeping through the country, Congress passed the CARES Act, Pub. L. 116-136, which, among many other provisions imposed a moratorium on evictions from rental housing for nonpayment of rent. That provision expired in June, 2020 and was replaced by a moratorium on evictions from the Centers for Disease Control, (85 Fed. Reg. 55, 292, 9/4/20),

continuing until December 31, 2020. The moratorium was extended and is set to expire on July 31, 2021. The rationale for the eviction moratorium was to prevent the spread of the coronavirus, which both Congress and the CDC feared would occur if people were evicted for nonpayment of rent and thus were forced to seek shelter elsewhere. *Id.* A particular fear was that congregate settings would increase the spread of the coronavirus. *Id.* The eviction moratorium did not apply in all cases, however, as the CDC stated, "These persons may also still be evicted for reasons other than not paying rent or making a housing payment." *Id.* at 55, 292-55, 293.

For several reasons, Plaintiff cannot obtain relief by invoking the CDC Order. Enforcement of the order is delegated to the Department of Justice, which "may initiate court proceedings as appropriate, seeking imposition of these criminal penalties." Id. at 55, 296. The reference is to possible penalties against an individual of up to $100,000 and against an organization of up to $200,000. There is no private right of action authorized. Furthermore, Plaintiff's Complaint indicates his eviction was commenced in 2017 (Doc.1, ¶ 50). He alleges that the local city government engaged in fraud in connection with obtaining land for development in an area which encompasses Plaintiff's rental unit, and supplies aerial photos of the scene. (Doc. 1, ¶¶187, 191-96). He also supplies information about heated arguments with his landlord (Doc. 1, ¶¶ 174, 176, 182) and asserts his

rent was current.  His allegations of current rent, an allegedly fraudulent land transaction, and arguments with his landlord make it clear that that the eviction which commenced in 2017 does not fall within the parameters of the CDC Order. Plaintiff has not alleged sufficient facts in support of his claim, and it is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count IX—13th Amendment Claim

Plaintiff claims that defendants have violated the Thirteenth Amendment. (Doc. 1, ¶¶ 333 -43).  The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII.  Plaintiff's claim appears to be that he is forced to perform government functions by bringing lawsuits when government officials do not, and therefore, he is forced into slavery. (Id., ¶342(b)).

Schied does not allege sufficient facts to support that he has been subjected to involuntary servitude or slavery. His claims under the Thirteenth Amendment are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii-ii).

Count X—Fair Debt Collection Practices Act Claim

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 sets forth, among other things, prohibited practices when a debt collector, as defined in the Act, attempts to collect a debt from a consumer. Plaintiff has endeavored to twist the provisions of the Act into an unrecognizable fashion, and to cite the FDCPA in this Count as authorization for him to collect a debt from certain Defendants. He has included that demand as part of his requested relief of $1,053,560,000.00

Although it is unclear, Plaintiff seems to allege two issues with debt. One is a possible student loan debt of $85,000, (Doc. 1, ¶¶ 91(m)-(r)), which he thinks should be resolved in his favor by educational loan institutions. Plaintiff has not alleged sufficient facts to establish any of the circumstances surrounding this debt or its possible collection, and his claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Plaintiff also has filed a claim against Capital One Financial Corporation and Richard Fairburn, its President, which appears to center on a tire repair, payment by a credit card, and a misunderstanding with the tire shop. (Doc. 1, ¶¶ 101-102, 125-130). Plaintiff has failed to state sufficient facts in support of his claim, and it is dismissed. 28 U.S.C. § 1915 (e)(2)(B)(i-ii).


Count XI—Malicious Prosecution and Abuse of Process Claim

The basis for Plaintiff's Count XI is difficult to discern. There is no evidence that he has been prosecuted for anything since 2012. In that year, a state court judge in Michigan held him in contempt and ordered him to jail for 30 days. The District Court in the Eastern District of Michigan dismissed his subsequent federal filing about the case, and enjoined future filings without leave of court. *Schied v. Khalil,* 2016 WL 4727477 (E.D. MI. 2016). Plaintiff had sued for money damages, claiming officials had "kidnapped" him to take him to jail. *Schied v. Khalil*, 2016 WL 11472341 (E.D. MI. 2016)(R&R).

Absent a prosecution, Plaintiff's claim fails legally and factually to fulfill the elements of the tort of malicious prosecution, which in Michigan are as follows:

In the state malicious prosecution action, plaintiffs had the difficult burden of proving four elements: "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice."

*Peterson Novelties, Inc. v City of Berkley*, 259 Mich. App. 1, 21, 672 N.W.2d 351, 363 (1987).  See also *Laney v. Blue Cross Blue Shield of Michigan*, 2003 WL 1343284 (Mich. App. 2003).

Absent a criminal prosecution that terminated in Schied's favor, the elements of the tort of malicious prosecution cannot be met, and his claim is dismissed.  28 U.S.C. § 1915(e)(2)(B)(i-ii).

There is no allegation that Plaintiff was prosecuted in South Dakota so the elements of a malicious prosecution claim in this state cannot be met. *Heib v. Lehrkamp*, 704 N.W.2d 875, 884 n.8 (S.D. 2005).  Plaintiff's claim is dismissed. 28 U.S.C. §1915(e)(2)(B)(i-ii).

The Michigan courts have determined that for a plaintiff to recover upon a theory of abuse of process, there must be proof of "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Lawrence v. Burdi*, 314 Mich. App. 203, 211-12, 886 N.W.2d 748 (2016) (quoting *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585 (1981)).  In *Friedman*, the Court stated that "the act must be something more than just the initiation of a lawsuit." *Id.* at 31, 312 N.W.2d 585.

Plaintiff has alleged abuse of process by one of the Defendants in connection with a notice to him to quit the premises, a filing of an eviction action in Michigan

state court, Plaintiff's subsequent removal of the action to federal court, and the federal court's remand of the action to state court. (Doc. 1, ¶¶ 351-67): Plaintiff has alleged insufficient facts to support this claim and it is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count XII—Sedition, Treason, Insurrection, Domestic Terrorism Claim

No private right of action exists under criminal statutes prohibiting these actions. Furthermore, Plaintiff has failed to allege sufficient facts in support of his claim and it is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Further comments are in order due to the serious nature of these allegations. It is unlikely that conduct involving sedition, treason, insurrection, or domestic terrorism would or should be the subject of a civil lawsuit for damages by a private plaintiff. In the United States, we rely on our public officials who have been entrusted with the responsibility to investigate such claims and to prosecute where appropriate. Plaintiff Schied has alleged in prior cases that he should have the authority to initiate criminal prosecutions on his own. As noted, he has declared himself a court. (Doc. 1, ¶ 45). Apparently, he has been warned by the United States Court of Appeals for the Sixth Circuit that claiming the right to criminally prosecute others for perceived criminal transgressions will result in sanctions.

*Schied v. Khalid,* 2016 WL 4727477, n. 3 (E.D. MI. 2016). Perhaps that is why he has fashioned his claims as a civil matter, and yet the redress he seeks is to arrest and imprison all Defendants until they have answered to his allegations of perceived wrongdoing. (Doc. 1, ¶ 443). Whether as a criminal or civil claim, Plaintiff's claim is dismissed. 28 U.S.C. § 1915(e)(2)(B)(i-ii).

Count XIII—Whistleblower, False Claims Act, Private Attorney General Claim

Although Plaintiff fashions Count XIII as a "Whistleblower, False Claims Act, Private Attorney General" Claim, his claim does not fit the definitions applicable to those terms. Plaintiff phrases his claim as one in which he acts "as Qui Tam whistleblower and debt collector for the sovereign people as 'Taxpayers' under the False Claims Act." (Doc. 1, ¶ 441). His claim is not one brought under the Whistleblower Protection Act, Pub.L.101-12, Apr.10, 1989, 103 Stat. 16 (as amended), which is designed to protect employees who report agency misconduct from discharge or other retaliation. Rather, plaintiff fashions a list of duties for federal and state employees (Doc. 1, ¶ 402), and alleges they have breached them; accuses them of human rights atrocities (id., ¶ 408); accuses them of sedition and treason (id., ¶¶ 418-20); and repeats the sedition and treason claims while lodging many other accusations of criminal and immoral behavior. (Id., ¶ 426). His allegation of "false claims" is in connection with a letter concerning Medicare,

which he says is a "false claim." (Id., ¶ 215). He alleges that when Medicare

states it does not discriminate on certain bases, that is a "false claim." (Id., ¶ 208).

The Medicare notice may or may not be accurate, but is not a false claim within the

purview of the False Claims Act, 31 U.S.C. §§ 3729-33. Plaintiff has failed to

allege sufficient facts in support of his claim and it is dismissed. Plaintiff alleges

Capital One and its President, Richard Fairburn, have made false claims (id., ¶

141) but has not supported his claim with sufficient evidence, and it is dismissed.

28 U.S.C. § 1915 (e)(2)(B)(i-ii).

Two additional issues are presented by Plaintiff's Count XIII. Because

plaintiff raises a claim under the False Claims Act against all Defendants, his

complaint must comply with the heightened pleading requirements of Rule 9(b).

See *Benaissa v. Trinity Health*, 2020 WL 3455795, *2 (8th Cir. 2020); *United

States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1163 (8th Cir.

2019). A Plaintiff can satisfy the requirements of Rule 9(b) by pleading such facts

as the time, place, and content of the defendant's false representations, as well as

the details of the defendant's fraudulent acts. *United States ex rel. Joshi v. St.

Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). In this case, Plaintiff does

not identify any specific instance of fraud but alleges Defendants have committed

"affirmative acts of discrimination, retaliation, RICO crimes, sedition, treason,

insurrection, and domestic terrorism." (Doc.1, ¶ 393). Plaintiff makes "conclusory"

and unsupported allegations that defendants are committing fraud. *Strubbe*, 915 F.3d at 1163; *Zerbst v. University of Phoenix*, 2020 WL 114185 (D.S.D. 2020). The complaint is defective under Rule 9(b). Accordingly, it does not state a claim for relief and is dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

Furthermore, plaintiff may not maintain an FCA claim *pro se*. *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951). See also *Zerbst*, 2020 WL 114185. This, however, is not the Court's rationale for dismissal of Plaintiff's claim.

## C. Additional issues

### 1. Judicial Immunity

Plaintiff's suit against federal and state judges for damages raises the question of the applicability and extent of judicial immunity. In numerous cases, the courts have expressed the rule set forth in *Mireles v Waco*, 502 U.S. 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991)(cleaned up) that "generally, a judge is immune from a suit for money damages." The reasoning behind the rule is the need to strengthen the administration of justice so that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* at 287 (citing *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L.Ed. 646 (1872)).

The Eighth Circuit recently quoted this rationale in recognizing judicial immunity for certain municipal judges. *Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). The court cited the "broad protections" for judges, and noted that "allegations of malice or corruption do not defeat judicial immunity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). A claim for "alleged deprivation of civil rights" is not an exception to the general rule, as the court made clear in *Justice Network, Inc. v. Craighead County*, 931 F.3d 753, 760 (8th Cir. 2019).

Plaintiff Schied has sued numerous federal and state judges in this lawsuit. His many prior cases have been heard by numerous judges, and he has been unsuccessful in his prior lawsuits. In this case, despite there being a lack of evidence to support his claims, he has alleged corruption, various conspiracies, treason, sedition, domestic terrorism, and insurrection against several judges. The Court in *Bradley v. Fisher* seemed to anticipate such a reaction in commenting that the losing party in a case not only might complain about the judgment, but would then "pass to the ascription of improper motives to the judge." 13 Wall., at 348. Based on longstanding precedent, all of the judges Plaintiff has named as Defendants in this case are absolutely immune and are dismissed with prejudice from this lawsuit. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

2. Prosecutorial Immunity

Plaintiff has sued the current and former Attorneys General of the United States, several current and former United States Attorneys and Assistant US Attorneys in Michigan, and current and former members of the office of the Attorney General of Michigan. The question of prosecutorial immunity must be addressed.

As is the case with judicial immunity, absolute immunity for prosecutors has been recognized for many years. See *Yaselli v. Goff*, 275 U.S. 503, 48 S.Ct. 155, 72 395 (1927); *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (federal prosecutors); *Imbler v. Pachtman*, 424 U. S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecutors). The rationale was expressed in *Imbler* as an acknowledgement that prosecutorial decisions would be likely to produce "retaliatory suits by angry defendants." 424 U.S., at 425, 96 S.Ct., at 992. The Court adhered to the principle that the accurate determination of guilt or innocence requires the exercise of judgment by a prosecutor, which should not be hampered by concerns about personal liability. *Id.*, at 426, 96 S.Ct. at 993.

The Eighth Circuit has applied this rule in numerous cases. As the Court noted in *Brodnicki v. City of Omaha*, 75 F. 3d 1261 (8th Cir. 1996), "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct

that is intimately associated with the judicial process." See also *Forste v. Hensley*,
2010 WL 5258479 (8th Cir. 2010). The court explained further in *Sample v. City of
Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016), that "Prosecutors enjoy absolute
immunity in their review of and decisions to charge a violation of the law."
Furthermore, absolute immunity will not be defeated by "allegations of improper
motive in the performance of prosecutorial functions." *Id*. (cleaned up).  Thus,
when a prosecutor is serving in the role of "advocate" for the government, "the
person is entitled to absolute prosecutorial immunity against these claims."  *Hunter
v. Unknown South Dakota Criminal*, 2020 WL 3791909, at *3-4 (D.S.D. 2020).

    As is evident, the decision whether to initiate a prosecution is protected by
absolute immunity.  The prosecutors sued by Plaintiff in this case are absolutely
immune and are dismissed from this case with prejudice.  28 U.S.C. §
1915(e)(2)(B)(i-iii).


3.  Personal Jurisdiction

    As the Eighth Circuit has explained, personal jurisdiction exists only if the
contacts between the defendant and the forum state are sufficient to establish that
the defendant has purposefully availed himself of the benefits and protections of
the forum state. *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002). This
purposeful availment must be sufficient to provide the defendant with fair

"warning that his activities might result in his being haled into court in that jurisdiction." *Id.* See *Moore v. Bertsch*, 450 F.App'x 561 (8th Cir. 2012); *Myers v. Starke*, 420 F.3d 728, 743 (8th Cir. 2005).

Plaintiff has sued officials of the State of Michigan and their employees, members of the federal judiciary in Michigan, county and city governments and officials in Michigan, disability rights organizations in Michigan and Illinois, and private individuals in Michigan. There is no indication that any of these Defendants have availed themselves of any legal protections or benefits in the State of South Dakota or have any connection to South Dakota whatsoever. Therefore, the Court lacks personal jurisdiction over these Defendants and the claims against them are hereby dismissed. *Hunter v. Unknown Named South Dakota Criminal*, 2020 WL 3791909, n.1 (D.S.D. 2020).

4. Venue

Plaintiff has filed his lawsuit in the District Court for the District of South Dakota, repeating some claims he made in his initial filing in the Eastern District of Michigan. (Doc. 7-2, 7-3, 7-4). As noted, all actions that are the subject of Plaintiff's suit occurred in the State of Michigan and many of the Defendants are residents of Michigan. The question arises, therefore, whether venue in South Dakota is appropriate.

34

In accordance with the general venue statute, venue is proper: (1) in a "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) otherwise, "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b); *Huot v. Montana State Department of Children and Family Services*, 2016 WL 4770040, *2 (D. OR. 2016).

Issues of proper venue have been addressed by federal courts in the District of South Dakota, and *Huot v. Montana State Department of Children and Family Services*, 2017 WL 3503364 (D. S.D. 2017), is instructive. In *Huot,* the Plaintiff sought damages from a number of state officials and the restoration of parental rights and accompanying rescission of adoption of her children in connection with actions that occurred in Montana and involved officials of that state. Plaintiff brought suit in South Dakota, Oregon and, as the Court noted, in at least 40 other districts. (*Id.*, n.1). The federal court in Oregon dismissed Plaintiff's case for lack of subject matter jurisdiction and improper venue. *Huot,* 2016 WL 4770040 (D. OR. 2016). The federal court in South Dakota did the same. *Huot,* 2017 WL

3503364 (D. S.D. 2017). Both courts noted that all of the events committed by the alleged wrongdoers occurred in Montana, and that dismissal in their respective jurisdictions was appropriate.

Here, all of the Defendants are private parties or federal or Michigan entities, and all of the events giving rise to Schied's claims occurred in Michigan. Therefore, venue is not proper in the District of South Dakota. 28 U.S.C. §1391(b). Transfer to the federal courts in Michigan is not required in the interest of justice. 28 U.S.C. § 1406(a) (district court shall dismiss case filed in wrong division or district or, "if it be in the interest of justice," transfer the case to the district in which it could have been brought). See *Costlow v. Weeks,* 790 F.2d 1486, 1488 (9th Cir. 1986); *Huot,* 2016 WL 4770040. The Plaintiff's claims are dismissed. 28 U.S.C. § 1915 (e)(2)(B)(i-ii).

Accordingly IT IS ORDERED that:

1) Plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 6) is granted;

2) Plaintiff's MOTION to File Declarations and Service on Adverse Party Constituting Notice to Other Parties Under Rule 5 of FRCP and Beneficiary's

Motion for Indigent and Disabled Filer to Avoid Expensive Copy and Mail Costs

by Waiver as a CM/ECF E-Filer (Doc. 7) is denied;

3) Plaintiff's MOTION for Certification of Service of Subpoenas and Complaints

by U.S. Marshals Without Prepaying Fees or Costs (Doc. 9) is denied.

4) Plaintiff's "EMERGENCY MOTION TO EXPEDITE and MOTION FOR

IMMEDIATE TEMPORARY DECLARATORY AND INJUNCTIVE RELIEF on

Case of Real THREAT OF VIOLENCE Against Totally and Permanently Disabled

Quad-Amputee Being CRIMINALLY EVICTED in spite of the 2020 CDC

ORDER OF EVICTION MORATORIUM and the 2021 CORONAVIRUS

PANDEMIC STIMULUS RELIEF BILL OF CONGRESS" is denied as moot.

5) Plaintiff's Motion which he captioned "BENEFICIARY'S / RELATOR's

OBJECTION TO SEALING OF CASE and MOTION TO SHOW CAUSE and

DEMAND (OR ORDER) FOR FEDERAL SPECIAL GRAND JURY

INVESTIGATION" (Doc. 11), is denied.

6) Plaintiff's Motion to Amend Complaint is granted.

7) Plaintiff's Complaint is dismissed. 28 U.S.C. § 1915(e)(2)(B).

8) As is stated in this Memorandum Opinion in which all claims are dismissed,

many of the claims are dismissed for failure to state a claim and lack of subject

matter jurisdiction, thus even though those claims are frivolous, they are dismissed

without prejudice. The claims against judges and prosecutors are dismissed based upon immunity, with those claims having probable jurisdiction, and those claims which are also frivolous, are dismissed with prejudice.

Dated this _28_ day of July, 2021.

BY THE COURT:

Lawrence L. Piersol

United States District Judge

ATTEST:

MATTHEW W. THELEN, CLERK

38